**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Case No. 6:26-cv-1238**

CLAUDIA CALZARETTA,

      Plaintiff (s)

vs.

FLORIDA DEPARTMENT OF
TRANSPORTATION,

      Defendant(s).

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CLAUDIA CALZARETTA ("Plaintiff"), sues Defendant,

FLORIDA DEPARTMENT OF TRANSPORTATION ("FDOT" or "Defendant"),

and alleges:

### INTRODUCTION

1. This action arises from the unlawful termination of a twenty-year

public servant whose employment record was, until the months immediately

preceding her separation, exemplary.

2. Plaintiff worked for Defendant, Florida Department of

Transportation from June 18, 2004 through October 8, 2024.

3. During nearly twenty years of employment, Plaintiff maintained a

strong performance record and received consistently positive evaluations,

including Commendable overall ratings.

4.      Plaintiff has a documented hearing impairment that substantially limits the major life activity of hearing. FDOT was aware of Plaintiff's impairment, which progressively worsened throughout her employment.

5.      Ms. Calzaretta relies on visual cues, lip reading, and captioning to fully understand spoken communication.

6.      Ms. Calzaretta is also the mother of a daughter diagnosed with multiple sclerosis, for whose care Ms. Calzaretta sought and used FMLA leave beginning in September 2023.

7.      Beginning in or around September 2023, Ms. Calzaretta engaged in a series of statutorily protected activities: she requested and used FMLA leave to care for her daughter; she requested reasonable accommodations connected to her hearing impairment, including closed captioning during a virtual training; she reported discriminatory and retaliatory conduct by her supervisors.

8.      After Plaintiff engaged in protected activity, including requesting and using FMLA leave, requesting accommodations for her hearing impairment, and complaining internally about discriminatory treatment, she was terminated.

### PARTIES

9.      Plaintiff, CLAUDIA CALZARETTA, is a resident of Volusia County, Florida.

10.     At all material times, Plaintiff was employed by Defendant as a

Planning Specialist III within FDOT District Five, located within this district.

11. Defendant, FLORIDA DEPARTMENT OF TRANSPORTATION, is an agency of the State of Florida and was Plaintiff's employer within the meaning of the ADA, FMLA, FCRA, and ADEA.

12. Defendant conducts business in the State of Florida within this District.

## JURISDICTION AND VENUE

13. This is an action for damages and equitable relief arising under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. ("Rehabilitation Act"); the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA"); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under federal law, including the Americans with Disabilities Act, the Age Discrimination in Employment Act, Section 504 of the Rehabilitation Act, and the Family and Medical Leave Act.

15. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

16. Venue is proper in the Middle District of Florida pursuant to 28

U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred in Volusia County, Florida.

17. At all material times, Plaintiff was employed by Defendant in Volusia County, Florida, within the Orlando Division of the Middle District of Florida.

18. Plaintiff has satisfied all conditions precedent to bringing this action, including the timely filing of a Charge of Discrimination with the Equal Employment Opportunity Commission and the receipt of a Notice of Right to Sue, and this complaint is filed within ninety days thereof.

### FACTUAL BACKGROUND

19. Plaintiff began working for FDOT on June 18, 2004.

20. At the time of her separation, Plaintiff held the position of Planning Specialist III within FDOT District Five's Planning and Environmental Management Office.

21. Plaintiff managed responsibilities associated with the Florida Scenic Highway Program, including statewide coordination responsibilities.

22. Throughout her employment, Plaintiff consistently received positive performance evaluations.

23. Plaintiff's 2021–2022 performance evaluation reflected a Commendable overall rating and included multiple Above Expectation and Exceptional ratings.

24. During approximately twenty years of employment, Plaintiff received no formal discipline.

25. Beginning in September 2023, Plaintiff sought FMLA to care for her daughter who was diagnosed with multiple sclerosis.

26. FDOT approved Plaintiff's FMLA leave on or about October 2, 2023.

27. Plaintiff also requested accommodations related to her hearing impairment.

28. Plaintiff has a documented hearing impairment that substantially limits her ability to hear spoken communication and discern speech.

29. FDOT management and coworkers were aware of Plaintiff's hearing impairment.

30. As a result of the worsening of her hearing impairment, beginning in or around 2023, Plaintiff increasingly required workplace accommodations, all of which were known to FDOT management.

31. Plaintiff had previously coordinated with FDOT's Office of Information Technology, including with employee Donna Caruso, to obtain assistive devices, including a specialized telephone for the hearing-impaired and call-forwarding to a personal cell phone with Bluetooth ComPilot integration to her hearing aids.

32. Plaintiff routinely communicated by leaning toward speakers, reading lips, watching facial expressions, and using her hands as a

communicative aid, conduct that her co-workers and supervisors observed for years without incident or complaint.

33. In the Spring of 2024, during a monthly staff meeting, Plaintiff asked Victor Muchuruza, who was leading the meeting whether he could use a microphone; Mr. Muchuruza the proceeded to ask the remaining attendees in a dismissive and sarcastic manner "Can you all hear me? Ok, good" and proceeded with the presentation without a microphone, causing Plaintiff significant embarrassment and emotional distress.

34. During a virtual training in 2024, Plaintiff requested closed captioning; the virtual training session attended by numerous FDOT employees so she could fully access the spoken material. The request was minimized and declined publicly, the captioning was not enabled, and no interactive process was undertaken to accommodate her need.

35. FDOT did not engage in a meaningful interactive process regarding Plaintiff's accommodation requests.

36. After Plaintiff began using FMLA leave management's treatment of Plaintiff changed materially.

37. After Plaintiff began requesting accommodations for her own disability, management's treatment of Plaintiff changed materially.

38. Plaintiff was subjected to increased scrutiny regarding her calendar, schedule, and work activities.

39. Plaintiff's supervisor, Edward Northey, repeatedly questioned Plaintiff's calendar and work assignments, and did not do the same to similarly situated employees outside of Plaintiff's protected categories.

40. Plaintiff's consultant support and program resources were reduced while her workload and statewide responsibilities remained unchanged.

41. Plaintiff was subjected to increased scrutiny, repeated questioning regarding her schedule and work activities, reduced support for statewide program responsibilities, shifting performance expectations, and repeated delays of her annual evaluation.

42. After Plaintiff disclosed and requested accommodations Plaintiff's supervisor and other coworkers, including Casey Lyon and Ed Northey, frequently and intentionally communicated with Plaintiff in ways that impaired her ability to understand spoken communication, including speaking softly, mumbling, and turning away from Plaintiff while speaking, despite knowing Plaintiff relied on lip reading and visual cues to communicate effectively. These acts were not isolated or inadvertent, but were deliberate, repeated, and calculated to isolate Plaintiff, impede her ability to perform her job duties, and signal that her disability and need for accommodation were unwelcome in the workplace.

43. In or around July 2024, Plaintiff raised concerns to Human Resources regarding management's treatment of her, including the complaints

regarding Ed intentionally mumbling to prevent her from understanding what he was saying; upon information and belief, Ed Northey does not have any speech impediment and was mumbling for the sole reason to isolate Plaintiff and to prevent her from discerning his speech.

44.     Plaintiff raised similar concerns to Human Resources regarding Ed Northey's treatment of Plaintiff, before he was placed in a supervisory position over Plaintiff—from as early as July 2022 with documented concerns occurring on several occasions including March 2023 and September 2023.

45.     Shortly after Plaintiff's July 2024 complaint, Plaintiff learned that her annual evaluation had again been postponed.

46.     The repeated delays were deliberate and were used by FDOT management to coordinate the content and timing of an evaluation designed to justify pretextual discipline against Plaintiff, rather than reflecting Plaintiff's actual job performance — which had been routinely been rated commendable — the evaluation was manipulated to create a paper trail supporting management's predetermined objective of removing Plaintiff because of her disability, her use of FMLA leave, and her internal complaints of discriminatory treatment.

47.     After Plaintiff complained to Human Resources regarding discriminatory and retaliatory treatment, FDOT management delayed Plaintiff's evaluation and acknowledged discussing revisions and additional supporting documentation for Plaintiff's evaluation scores, despite having already reached

preliminary scoring determinations earlier that same day.

48.     Plaintiff's 2024 annual performance evaluation was rescheduled four (4) times. Each rescheduling was directed or facilitated by Mr. Northey.

49.     Plaintiff expressed her concern that the repeated postponements signaled forthcoming adverse action.

50.     On the morning of July 31, 2024, Plaintiff awoke unwell but came to the office because her evaluation had been rescheduled for 9:30 a.m. that morning.

51.     Shortly before 9:00 a.m., Mr. Northey moved the evaluation a fourth time, to 1:00 p.m., conflicting with Plaintiff's pre-existing field obligations. He provided no explanation.

52.     Once Plaintiff learned that her evaluation would again be postponed and asked Casey Lyon, who had been meeting in the office with Mr. Northey at the time of Plaintiff's scheduled evaluation, why the evaluation had been delayed, as Plaintiff was concerned that the repeated rescheduling reflected something other than routine administrative scheduling.

53.     Ms. Lyon disclosed that she had been coordinating with Ed Northey concerning the content and framing of Plaintiff's evaluation.

54.     This admission confirmed Plaintiff's suspicion that the evaluation was being manipulated by the very individuals whose conduct she had complained about, in furtherance of the discriminatory and retaliatory treatment

described herein.

55.    During the July 31, 2024 interaction, Ms. Lyon continued speaking while turned away from Plaintiff, preventing Plaintiff from observing Ms. Lyon's facial expressions and lip movements necessary for Plaintiff to understand the conversation because of her hearing impairment.

56.    As Ms. Lyon continued speaking while turned away from Plaintiff, Plaintiff briefly placed her hands near Ms. Lyon's elbows in an attempt to orient the conversation face-to-face, so Plaintiff could understand what Ms. Lyon was saying, observe Ms. Lyon's facial expressions and lip movements and understand the conversation.

57.     As Ms. Lyon continued speaking while turned away from Plaintiff, Plaintiff gently and briefly rested her hands on the outside of Ms. Lyon's arms, near her elbows, for the sole purpose of orienting the conversation face-to-face so that Plaintiff could squarely watch Ms. Lyon's mouth move, observe her lip movements and facial expressions, and thereby comprehend what was being said — a common and necessary practice for individuals with significant hearing loss who rely on lip-reading and visual cues to communicate.

58.    Plaintiff did not squeeze, pull, shake, grip, restrain, or apply force to Ms. Lyon in any manner, and the contact was momentary, non-aggressive, and consistent with Plaintiff's longstanding manner of communicating in the workplace, of which Ms. Lyon and others were well-aware.

59.     Ms. Lyon did not verbally object, step away, flinch, or otherwise indicate during the interaction that Plaintiff's conduct was unwelcome or causing her fear or physical harm.

60.     Plaintiff did not strike, threaten, or injure Ms. Lyon.

61.     Plaintiff's attempt to orient the conversation face-to-face was consistent with her ordinary workplace communication methods necessitated by her hearing impairment and reliance on lip reading and visual cues, all of which were known to Ms. Lyon, Mr. Northey, and FDOT management.

62.     Despite this knowledge, FDOT later relied on this disability-related communicative conduct as a basis for Plaintiff's removal and termination, and to support the pretextual narrative that management had already begun coordinating prior to July 31, 2024, as conceded through Ms. Lyon's admission that she had been coordinating with Mr. Northey regarding Plaintiff's evaluation and continued employment.

63.     Thereafter, Ms. Lyon published a false statement concerning Plaintiff which was adopted by FDOT in the adverse actions that followed.

64.     Importantly, an independent witness, environmental specialist Deysia Roberson, observed the interactions between Plaintiff and Ms. Lyon, and provided a statement that materially differs from the inflammatory "grabbing," "squeezing," and "shaking" narrative subsequently advanced by FDOT decision-makers.

65.    On August 5, 2024, two business days after the workplace interaction, FDOT removed Plaintiff from the workplace, and FDOT confiscated Plaintiff's badge and work computer.

66.    Further, FDOT placed Plaintiff on compulsory leave status.

67.    FDOT informed Plaintiff she would be required to undergo a compulsory psychological fitness-for-duty evaluation.[1]

68.    Plaintiff submitted to the forced psychological evaluation on August 20, 2024.

69.    FDOT later relied upon the psychological evaluation in determining that Plaintiff should not return to the workplace, further discriminating against Plaintiff based on a disability.

70.    FDOT did not identify any prior disciplinary history, pattern of violent conduct, or progressive discipline supporting its decision.

71.    On September 12, 2024, FDOT issued Plaintiff an Intent to Dismiss.

72.    On September 15, 2024, Plaintiff filed an internal EOO complaint alleging discrimination and retaliation, identifying disability discrimination, retaliation, and adverse treatment following protected activity.

73.    FDOT later stated in its EEOC Position Statement that the outcome of the EOO investigation would not have altered the disciplinary decision.

---

[1] The resulting psychologist's report was issued on August 27, 2024. Plaintiff has been denied access to the report; her public-records request (PRR-2024-7320) was blocked under § 119.071(4)(b)1, Florida Statutes.

74. Plaintiff remained excluded from the workplace during this period.

75. After being presented with an ultimatum, on October 8, 2024, Plaintiff resigned in lieu of termination.

76. At the time of her forced resignation, Plaintiff had been removed from the workplace for more than two months; Plaintiff had been compelled to undergo a psychological fitness-for-duty evaluation; Plaintiff faced imminent dismissal; and Plaintiff had been deprived of access to the workplace and her job responsibilities.

77. Plaintiff's resignation constituted a constructive discharge.

## COUNT I — DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (DISPARATE TREATMENT)
### 42 U.S.C. §§ 12101 et seq.

78. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 1-77 as if fully set forth herein.

79. At all times relevant to this action, Plaintiff was an individual with a disability within the meaning of 42 U.S.C. § 12102, in that her hearing impairment substantially limited the major life activity of hearing.

80. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8), in that, with or without reasonable accommodation, she was able to perform the essential functions of her position with FDOT — as evidenced by her twenty (20) years of continuous employment without incident, her commendable

performance evaluations, and her sustained job performance using the accommodations that had been in place throughout her tenure.

81. Defendant FDOT is a covered entity within the meaning of 42 U.S.C. § 12111(2) and (5).

82. Defendant FDOT is a "public entity" within the meaning of 42 U.S.C. § 12131; § 12132.

83. Defendant subjected Plaintiff to adverse employment actions because of her disability, including but not limited to: manipulating, delaying, and coordinating the content of her performance evaluation in order to manufacture a basis for discipline; treating disability-related communicative conduct — namely, the brief and non-aggressive physical contact on July 31, 2024, undertaken so that Plaintiff could lip-read and observe visual cues — as a basis for discipline; placing Plaintiff on compulsory administrative leave; subjecting Plaintiff to a fitness-for-duty evaluation predicated on a disability; and issuing a Letter of Intent to Dismiss and ultimately terminating Plaintiff's employment on October 8, 2024.

84. The reasons proffered by Defendant for the foregoing adverse actions are pretextual.

85. The true motivating reason for Defendant's conduct was Plaintiff's disability, as evidenced by, among other things, the predetermined nature of the removal effort, the coordination between Ms. Lyon and Mr. Northey prior to July

31, 2024, and Defendant's weaponization of Plaintiff's disability-related communicative practices to construct a pretextual justification for termination

86. Defendant's conduct violated 42 U.S.C. § 12112(a), which prohibits discrimination against a qualified individual on the basis of disability with respect to the terms, conditions, and privileges of employment.

87. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost retirement contributions, emotional distress, humiliation, damage to her professional reputation, and other damages to be proven at trial.

**COUNT II — FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. §§ 12101 et seq.**

88. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

89. To state a claim for failure to accommodate under the ADA, a plaintiff must establish that (1) she is disabled, (2) she is a qualified individual, and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).

90. Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12102.

91. Plaintiff is a qualified individual with a disability within the

meaning of 42 U.S.C. § 12111(8), in that, with the reasonable accommodations, she was able to perform the essential functions of her position throughout her twenty (20) years of employment with FDOT.

92. Plaintiff requested reasonable accommodations from Defendant.

93. Defendant was at all relevant times aware of Plaintiff's disability and her need for accommodation, and had in fact accommodated her communicative practices for many years without incident.

94. Notwithstanding its knowledge of Plaintiff's disability and accommodation needs, Defendant failed to engage in a good-faith interactive process and instead progressively resisted accommodating Plaintiff's hearing impairment, including by permitting and tolerating conduct by Plaintiff's supervisor and coworkers, who frequently and intentionally communicated with Plaintiff in ways that impaired her ability to understand spoken communication — despite knowing that Plaintiff relied on lip-reading and visual cues; characterizing Plaintiff's disability-related communicative conduct as misconduct rather than recognizing it as a manifestation of her disability; revoking longstanding accommodations and erecting new barriers to Plaintiff's ability to perform her job, including in connection with the compulsory disability leave issued on or about September 12, 2024.

95. Defendant's failure to provide reasonable accommodations was not the result of undue hardship and violated 42 U.S.C. § 12112(b)(5).

96.     As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost retirement contributions, emotional distress, humiliation, damage to her professional reputation, and other damages to be proven at trial.

## COUNT III — RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12203

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

98.     To state a claim for retaliation under the ADA, a plaintiff must establish that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action.

99.     Plaintiff engaged in statutorily protected activity within the meaning of 42 U.S.C. § 12203(a) by, among other things, disclosing her hearing disability to Defendant; requesting reasonable accommodations for her hearing disability on multiple occasions throughout her employment; reporting discriminatory and hostile treatment by her supervisor and coworkers, including through internal complaints beginning in or around September 2023 and continuing through her September 15, 2024 letter to FDOT EEO; opposing practices made unlawful by the ADA, including the weaponization of her disability-related communicative conduct as a basis for discipline.

100. Defendant subjected Plaintiff to adverse employment actions following her protected activity.

101. A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her.

102. As alleged herein, FDOT management had been actively coordinating Plaintiff's removal prior to July 31, 2024.

103. The temporal proximity between Plaintiff's escalating accommodation requests, her internal complaints, and the adverse actions further supports the causal connection.

104. Defendant's stated reasons for the adverse actions are pretextual, and the true reason was retaliation for Plaintiff's protected activity, in violation of 42 U.S.C. § 12203(a).

105. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost retirement contributions, emotional distress, humiliation, damage to her professional reputation, and other damages to be proven at trial.

### COUNT IV – DISABILITY DISCRIMINATION; FAILURE TO ACCOMMODATE SECTION 504 OF THE REHABILITATION ACT OF 1973 29 U.S.C. § 794

106. Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

107. Section 504 of the Rehabilitation Act prohibits any program or

activity receiving federal financial assistance from discriminating against qualified individuals with a disability solely by reason of their disability.

108. Defendant FDOT is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b) and is subject to Section 504.

109. By accepting federal financial assistance, Defendant has waived sovereign immunity from suit under Section 504. 42 U.S.C. § 2000d-7.

110. Plaintiff is a "qualified individual with a disability" as defined by 29 U.S.C. § 705(20).

111. Plaintiff has a documented bilateral hearing impairment that substantially limits the major life activity of hearing, and she was able, with or without reasonable accommodation, to perform the essential functions of her position as a Planning Specialist III, as evidenced by nearly twenty years of service and consistently positive evaluations including a Commendable rating in 2021–2022.

112. Defendant had actual knowledge of Plaintiff's disability. Plaintiff's hearing impairment was known to her supervisors and coworkers, and Plaintiff had previously coordinated with FDOT's Office of Information Technology to obtain assistive devices, including a specialized telephone for the hearing-impaired and call-forwarding integrated with her hearing aids.

113. Plaintiff requested reasonable accommodations, including but not limited to: (a) closed-captioning during a virtual training session in 2024; (b) face-

to-face communication during workplace conversations so that she could use lip reading and visual cues; and (c) accessible communication during disciplinary and performance-related discussions.

114. Defendant denied or failed to provide these reasonable accommodations. The captioning request was publicly minimized and not enabled. Plaintiff's supervisor and coworkers, including Casey Lyon, intentionally communicated with Plaintiff in ways that defeated her ability to lip-read— speaking softly, mumbling, and turning away while speaking — despite knowing she relied on visual cues.

115. Defendant failed to engage in any meaningful interactive process to identify a reasonable accommodation. Defendant did not investigate alternatives, did not document any undue hardship, and did not propose any accommodation in response to Plaintiff's requests.

116. The requested accommodations were reasonable on their face and would not have imposed an undue hardship on Defendant.

117. Defendant's failure to accommodate was intentional or, at minimum, the product of deliberate indifference to Plaintiff's federally protected rights, supporting an award of compensatory damages under Section 504.

118. As a direct and proximate result of Defendant's violations of Section 504, Plaintiff has suffered lost wages and benefits, lost future earning capacity, emotional distress, humiliation, loss of professional reputation, and other

damages.

## COUNT V – DISABILITY DISCRIMINATION
## SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794

119.  Plaintiff incorporates by reference paragraphs 1 through 77 if fully set forth herein.

120.  Plaintiff is a qualified individual with a disability who could perform the essential functions of her position with or without reasonable accommodation.

121.  Defendant subjected Plaintiff to adverse employment actions because of her disability, including: (a) increased scrutiny of her schedule, calendar, and workload; (b) reduction of consultant support and program resources; (c) repeated postponement and restructuring of her annual evaluation; (d) compulsory removal from the workplace; (e) compulsory placement on disability leave; (f) compulsion to undergo a psychological fitness-for-duty evaluation; and (g) constructive discharge on October 8, 2024.

122.  Defendant's stated reason for separating Plaintiff, that her disability-related communicative conduct on July 31, 2024 constituted workplace violence, is pretext for disability discrimination.

123.  The very conduct relied upon was a manifestation of Plaintiff's known reliance on visual communication cues to compensate for her hearing impairment, conduct that her coworkers and supervisors had observed without

complaint for years.

124.  Defendant has not identified any prior disciplinary history, pattern of violent conduct, or progressive discipline supporting its decision.

125.  Defendant did not consider, evaluate, or document any less restrictive measures, such as ordinary administrative leave pending investigation, mediation, or progressive discipline, before resorting to compulsory disability leave and a compelled psychiatric examination.

126.  Disability was the sole, or alternatively a but-for, cause of Plaintiff's separation.

127.  As a direct and proximate result, Plaintiff has suffered the damages described herein.

**COUNT VI – UNLAWFUL MEDICAL EXAMINATION**
**SECTION 504 OF THE REHABILITATION ACT**
**42 U.S.C. § 12112(d)(4)**

128.  Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

129.  The Rehabilitation Act incorporates the standards applied under Title I of the ADA. 29 U.S.C. § 794(d). Under 42 U.S.C. § 12112(d)(4)(A), an employer may not require a medical examination of an employee unless the examination is job-related and consistent with business necessity.

130.  On August 1, 2024, the day after a single disputed interpersonal exchange that involved no injury, no threat, no law enforcement contact, and no

prior history of violence, Defendant required Plaintiff to undergo a compulsory psychological fitness-for-duty examination as a condition of continued employment.

131. The compelled examination was not job-related and consistent with business necessity.

132. Defendant lacked objective evidence that Plaintiff posed a direct threat to herself or others or was unable to perform the essential functions of her position. Defendant's decision to compel a psychiatric examination after a single disputed interaction, in the absence of injury, threat, or prior history, was not supported by the individualized assessment that the statute requires.

133. Defendant compounded the violation by relying on the resulting report to deny Plaintiff's return to work without permitting Plaintiff the benefit of counsel.

134. Plaintiff's public-records request for the report (PRR-2024-7320) was blocked under § 119.071(4)(b)1, Florida Statutes.

135. As a direct and proximate result, Plaintiff was excluded from her workplace, deprived of access to her duties and badge, subjected to a compelled psychiatric evaluation, and ultimately constructively discharged based on a disability.

136. Alternatively, Defendant discharged Plaintiff after requiring and relying upon a psychiatric evaluation related to Plaintiff's actual or perceived

disability.

## COUNT VII – RETALIATION
## SECTION 504 OF THE REHABILITATION ACT
## 29 U.S.C. § 794

137.   Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

138.   Plaintiff engaged in protected activity under Section 504 (and the parallel ADA framework incorporated therein) by, among other things: (a) requesting reasonable accommodations for her hearing impairment, including closed-captioning and accessible communication; (b) raising internal concerns about how her hearing impairment was being disregarded, including the deliberate mumbling and turning-away by her supervisor and coworkers; and (c) filing an internal Equal Opportunity Office complaint on September 15, 2024 alleging disability discrimination and retaliation.

139.   Defendant was aware of Plaintiff's protected activity.

140.   Defendant subjected Plaintiff to materially adverse employment actions thereafter, including but not limited to, increased scrutiny, reduction of program resources, repeated postponement of her annual evaluation, removal from the workplace, compulsory disability leave, a compelled fitness-for-duty examination, an Intent to Dismiss, and constructive discharge.

141.   A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as evidenced by, among other things, temporal

proximity, the absence of any prior discipline in nearly twenty years, and the substantive admission in Defendant's EEOC Position Statement that the outcome of the EOO investigation "would not have impacted the decision on the corrective action," confirming that Defendant's separation decision was insulated from, rather than informed by, Plaintiff's discrimination complaint.

142.   As a direct and proximate result, Plaintiff has suffered the damages described herein.

## COUNT VIII – FMLA INTERFERENCE
### 29 U.S.C. § 2615(a)(1)

143.   Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

144.   Plaintiff was an eligible employee under the FMLA, having been employed by Defendant for nearly twenty years and having worked the requisite hours.

145.   Defendant is a covered employer under the FMLA, 29 U.S.C. § 2611(4).

146.   Plaintiff was entitled to FMLA leave to care for her daughter, who suffers from multiple sclerosis, a serious health condition within the meaning of 29 U.S.C. § 2611(11).

147.   Defendant approved Plaintiff's FMLA leave on or about October 2, 2023.

148.   Defendant interfered with, restrained, and denied Plaintiff's exercise of her FMLA rights by, among other things: (a) increasing scrutiny of Plaintiff's calendar and schedule after she sought and used leave; (b) withholding information necessary to perform her duties; (c) reducing program resources and consultant support; (d) shifting and obstructing performance expectations during periods when she required leave-related flexibility; and (e) ultimately separating Plaintiff under circumstances in which her use of FMLA leave was a negative factor in management's decisional calculus.

149.   As a direct and proximate result, Plaintiff has suffered lost wages and benefits, liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii), attorneys' fees, and other damages.

### COUNT IX – FMLA Retaliation
### 29 U.S.C. § 2615(a)(2)

150.   Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

151.   Plaintiff engaged in protected activity under the FMLA by requesting and using FMLA leave to care for her daughter.

152.   Defendant was aware of Plaintiff's exercise of her FMLA rights.

153.   Following Plaintiff's exercise of FMLA rights, Defendant subjected Plaintiff to materially adverse employment actions, including but not limited to, increased scrutiny, reduction of resources, shifting performance expectations,

repeated postponement of her annual evaluation, compulsory removal from the workplace, compulsory disability leave, a compelled fitness-for-duty examination, an Intent to Dismiss, and constructive discharge.

154. There is a causal connection between Plaintiff's exercise of FMLA rights and the adverse actions, as evidenced by the deterioration of management's treatment of Plaintiff after she began using FMLA leave; the absence of any prior discipline in nearly twenty years; the convergence of FMLA leave with her requests for disability accommodation; and the disproportionate response to a single disputed interaction.

155. But for Plaintiff's exercise of rights under the FMLA, Defendant would not have subjected Plaintiff to the adverse actions alleged herein.

## COUNT X – DISABILITY DISCRIMINATION
### Florida Civil Rights Act, Fla. Stat. § 760.10

156. Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

157. The FCRA prohibits an employer from discharging or otherwise discriminating against an individual because of a handicap. Fla. Stat. § 760.10(1)(a). FCRA disability claims are analyzed under the same framework as the ADA. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

158. Plaintiff is a person with a handicap within the meaning of the FCRA.

159.    Plaintiff could perform the essential functions of her position with or without reasonable accommodation.

160.    Defendant discriminated against Plaintiff on the basis of her handicap by failing to engage in the interactive process, denying reasonable accommodations, subjecting her to disparate treatment, compelling a psychiatric examination not justified by job-related business necessity, and ultimately constructively discharging her.

161.    The FCRA constitutes a state-law waiver of sovereign immunity for the relief sought. S*ee Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281 (11th Cir. 2003).

162.    As a direct and proximate result, Plaintiff has suffered the damages described herein.

## COUNT XI – RETALIATION
## FLORIDA CIVIL RIGHTS ACT,
### Fla. Stat. § 760.10(7)

163.    Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

164.    The FCRA prohibits retaliation against any person who has opposed any practice that is an unlawful employment practice under the FCRA, or who has made a charge or participated in any manner in an investigation, proceeding, or hearing under the FCRA.

165.    Plaintiff engaged in protected activity by raising internal concerns

about disparate treatment, requesting accommodations for her hearing impairment, complaining to Human Resources in July 2024, and filing an internal EOO complaint on September 15, 2024.

166. Defendant subjected Plaintiff to materially adverse employment actions thereafter, including those described above.

167. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions.

## COUNT XII – AGE DISCRIMINATION
### Florida Civil Rights Act, Fla. Stat. § 760.10

168. Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

169. At all material times, Plaintiff was a member of the class protected by the FCRA's prohibition on age discrimination, being over 40 years of age at the time of her separation.

170. Plaintiff was qualified for her position, as evidenced by nearly twenty years of service and consistently positive performance evaluations.

171. Plaintiff suffered adverse employment actions including separation from employment.

172. Upon information and belief, Plaintiff was replaced by a substantially younger individual and substantially younger employees withing FDOT were treated more favorably, as they were not subjected to the same

discipline for similar conduct, retained in similar or worse circumstances, or selected for the positions Plaintiff applied for in 2022 and 2023.

173. Alternatively, the totality of the circumstances supports an inference of age-based animus, including the agency's pattern of promoting younger employees over Plaintiff for the Property Management Administrator position 55012627 in December 2022 and the Engineer Specialist III position 55010924 in April 2023.

**COUNT XII – HOSTILE WORK ENVIRONMENT BASED ON DISABILITY**
**Section 504 & the FCRA**

174. Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

175. Plaintiff was subjected to harassment based on her disability that was sufficiently severe or pervasive to alter the terms and conditions of her employment and to create an objectively and subjectively hostile work environment.

176. The harassment included, among other conduct: (a) the deliberate and repeated practice by Plaintiff's supervisor and coworkers, including Casey Lyon, of speaking softly, mumbling, and turning away while speaking, despite knowing Plaintiff relied on lip reading and visual cues; (b) the public minimization of Plaintiff's captioning request during a virtual training; (c) heightened scrutiny of Plaintiff's schedule and work product immediately

following her accommodation requests and FMLA usage; (d) the weaponization of Plaintiff's disability-related communicative gestures (using her hands to orient face-to-face conversations) as a basis for discipline and dismissal.

177. Defendant knew or should have known of the harassment and failed to take prompt and effective remedial action.

178. The harassment culminated in Plaintiff's constructive discharge on October 8, 2024.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, granting the following relief:

a. A declaratory judgment that Defendant's conduct violated Section 504 of the Rehabilitation Act, the FMLA, the FCRA, the ADA, and the ADEA;

b. Reinstatement to Plaintiff's former position, or in the alternative, front pay in lieu of reinstatement;

c. Back pay, including lost wages, benefits, retirement contributions, leave accruals, and prejudgment interest;

d. Compensatory damages for emotional distress, humiliation, mental anguish, and loss of professional reputation, to the extent permitted by each applicable statute;

e. Liquidated damages under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii);

f. Injunctive relief, including expungement of the disciplinary record from Plaintiff's personnel file and prohibition on use of the contested fitness-for-duty report in any future employment-related decision;

g. Reasonable attorneys' fees and costs under 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), 29 U.S.C. § 2617(a)(3), and Fla. Stat. § 760.11(5);

h. Pre- and post-judgment interest to the extent allowed by law; and

i. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 5th, 2026

Respectfully submitted,

/s/ *Katherine A. Chin.*
Katherine A. Chin, Esq.
1004417
kc@legalchin.com
Chin Law PA
33 Southwest 2nd Avenue, Suite 1100
Miami, Florida, 33177 Telephone: (786)505–1225
*Attorneys for Plaintiff, Claudia Calzaretta*